MAX AND LILLY WIDER, ET AL., [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Wider v. Commissioner
Docket Nos. 22688-81, 19018-82, 19232-82, 25545-82, 25607-82, 25123-84, 25124-84.
United States Tax Court
T.C. Memo 1987-75; 1987 Tax Ct. Memo LEXIS 71; 53 T.C.M. (CCH) 85; T.C.M. (RIA) 87075; February 9, 1987. Steven R. Wolfson, for the petitioners. Richard D. Ames, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In these consolidated cases respondent determined deficiencies in and additions to petitioners' joint Federal income tax liabilities as follows: Additions to Tax
I.R.C. Section [2]
Year
Docket No.
Deficiency
6653(a)(1)
6653(a)(2)
6653(b)
6661(a)
Petitioners Max and Lilly Wider
1973
22688-81
$122,851.66
$61,425.83
1974
22688-81
98,869.63
49,434.82
1975
19018-82
229,043.78
114,521.89
1976
19018-82
112,244.87
56,122.44
1977
19018-82
60,945.66
30,472.83
1978
25607-82
4,889.20
244.46
1979
25607-82
38,579.98
1,928.99
1980
25124-84
594,832.00
29,742.00
1981
25124-84
605,531.00
30,277.00
*
1982
25124-84
437,189.00
43,719.00
Petitioners Simon and Idelle Wider
1977
19232-82
$ 61,127.66
$3,056.38
1978
25545-82
6,579.39
328.96
1979
25545-82
38,969.10
1,948.46
1980
25123-84
592,979.00
29,648.95
1981
25123-84
603,107.00
30,155.35 **
1982
25123-84
436,468.00
43,646.80
*72 The parties have agreed to all issues concerning the tax deficiencies set forth above. The remaining issues for decision are whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2), section 6653(b), and section 6661(a). FINDINGS OF FACT Many of the facts have been stipulated and are so found. Petitioners Max and Lilly Wider are husband and wife, and petitioners Simon and Idelle Wider are husband and wife. All petitioners resided in Dallas, Texas, at the time their petitions were filed. Simon is the son of Max and Lilly. Petitioners timely filed their respective joint Federal income tax returns for the years at issue herein. Max Wider, a native of Czechoslovakia, immigrated to the United States in 1950 at the age of 32. Prior to immigrating to the United States, Max studied to be a rabbi, which constituted his only formal education. In 1956, Max started *73 a wholesale jewelry business under the name of Standard Wholesale. The business was operated as a sole proprietorship. Max did not maintain adequate books and records for the business. He merely saved original sales and expense documents (e.g., sales invoices, deposit slips, and cancelled checks) which he annually turned over to an accountant for preparation of the joint income tax return. In 1967, as a result of an audit of Max and Lilly's 1964 and 1965 joint Federal income tax returns, respondent, pursuant to section 6001, notified Max that the records with respect to his jewelry business were inadequate. That notice listed the following six inadequacies in the books and records of Standard Wholesale: 1. Sales invoices were not prepared for all sales. 2. Many sales receipts were not deposited in the business bank account. 3. Some checks received on sales were not recorded as sales at any time and were simply endorsed and used to pay expenses. 4. Interest bearing loans were made to individuals but no records of the interest income allegedly were kept, and the interest income was not reported on the tax returns. 5. Some customer checks simply were being cashed *74 for a discount at stores and neither the checks nor the proceeds were reported as sales on the tax returns. 6. Promissory notes received from customers on some credits sales were sold at a discount to a bank, but the sales were not reported on the tax returns. In 1975, Max hired a new accountant. The account recommended that a bookkeeping system be established and that a bookkeeper be hired to maintain the books and records. In 1976, Max hired a bookkeeper for that purpose. Also in 1976, Max and Lilly's son Simon became a 50-percent partner in Standard Wholesale. In 1975 and 1976, Max submitted financial statements to financial institutions in connection with loan applications. Thereon he represented that the "profit" or "net profit" from his jewelry business was approximately $180,000 in 1974 and $150,000 in 1975, although the joint income tax returns for 1974 and 1975 reflected a net profit in 1974 of only $3,893.75 and a net operating loss in 1975 of $33,508. Beginning in 1975, respondent conducted a number of audits of Max and Lilly's 1973 through 1982 joint Federal income tax returns. For the years 1973 through 1977, many of the inadequacies that were present in *75 the books and records of Standard Wholesale for the years 1964 and 1965 were still present (namely, sales invoices were not prepared for all sales, not all sales proceeds were deposited in the bank accounts, and cash received and customer checks often were used to purchase jewelry for resale). No evidence was offered as to the condition of the books and records of Standard Wholesale for the years 1978 through 1982. Because of the inadequacies in the books and records of Standard Wholesale for the years 1973 through 1977, respondent computed the gross receipts of Standard Wholesale for 1973 through 1977 using the bank deposits and cash expenditures methods of proof. Petitioners now concede that respondent's computations of the gross receipts of Standard Wholesale and the taxable income of petitioners are essentially correct. Set forth below for each of the years 1973 through 1977 is a comparison of the gross receipts of Standard Wholesale and the taxable income of Max and Lilly as reported on their joint Federal income tax returns with the gross receipts and joint taxable income agreed to by the parties: Gross Receipts
Corrected
Omitted
Year
on Tax Returns
Gross Receipts
Gross Receipts
1973
$627,774.88
$945,167.31
$317,392.43
1974
597,526.63
935,204.22
337,677.59
1975
1,688,319.00
2,018,991.28
330,672.28
1976
2,538,603.30
2,671,579.92
132,976.62
1977
2,255,336.00
2,416,366.38
161,030.38
*76 Taxable Income
Corrected
Omitted
Year
on Tax Returns
Taxable Income
Taxable Income
1973
* $2,107.30 $320,695.15
$318,587.85
1974
* 4,476.13 186,109.31
181,633.18
1975
(33,103.00)
297,569.28
330,672.28
1976
1,913.00 189,714.62
187,801.62
1977
28,733.00 109,248.19
80,515.19
OPINION Because the parties have agreed to the deficiencies in tax for each of the years in issue, the only issues for decision pertain to the additions to tax under section 6653(b), section 6653(a)(1) and (2), and section 6661. The addition to tax under section 6653(b) is asserted only against Max and Lilly. Section 6653(b) Addition to Tax
Section 6653(b) [3] provides an addition to tax of 50 percent of the amount of the underpayment if any part of the underpayment was due to fraud. Respondent bears the burden of proving by clear and convincing evidence (1) that there was an underpayment of tax and (2) that some portion of the underpayment was due to fraud for each year in which the fraud addition to tax has been determined. Sec. 7454(a); Rule 142(b); . *77 The tax deficiencies agreed to by the parties herein establish the substantial underpayments of tax on Max and Lilly's joint Federal income tax returns for each of the years 1973 through 1977. For purposes of the section 6653(b) addition to tax, fraud is an intentional wrongdoing with the specific intent to evade a tax due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. , cert. denied ; , affg. a Memorandum Opinion of this Court; , affd. without published opinion . Fraud need not be established by direct evidence, but may be determined from all of the facts *78 and circumstances. ; , affd. without published opinion . The substantial understatements of income, the failure to maintain adequate and accurate books and records, and the unusual use of cash establish petitioners' (Max and Lilly's) intent to evade payment of their correct Federal income tax liabilities for the five years for which the fraud addition to tax is asserted. Petitioners admit that the books and records of Standard Wholesale were insufficient to accurately account for the business' income and expenses. Max's failure to correct the inadequacies in his books and records that were noted by respondent in 1967 is inexcusable and is further evidence of his intent to conceal taxable transactions from respondent. Regardless of Max's lack of business training and his purported failure to understand standard bookkeeping practices, respondent's notice specifying inadequacies in the books and records of Standard Wholesale should have precipitated immediate remedial action. Max, however, delayed *79 even in hiring a bookkeeper until 1976. Petitioners cite , and argue that their concessions herein as to the tax deficiencies they owe for the years 1973 through 1977 are not proof of fraud. Petitioners misunderstand the facts of Derksen. In that case, the taxpayer did not agree that the tax deficiencies determined by the Commissioner were correct but only that the Commissioner had made a determination of tax deficiencies which he alleged were correct. In the absence of any proof as to the correctness of the Commissioner's determinations, it was held that the Commissioner had failed to satisfy his burden of proof. Here, the parties have agreed to the correctness of the tax deficiencies determined by respondent for each of the years for which fraud is asserted. We sustain respondent's determination of the additions to tax under section 6653(b) as to petitioners Max and Lilly Wider for each of the years 1973 through 1977. Sections 6653(a)(1) and (a)(2), and 6661(a) Additions to Tax
As set forth previously herein, respondent also determined additions to tax against petitioners Max and Lilly Wider and petitioners *80 Simon and Idelle Wider under sections 6653(a)(1), 6653(a)(2), and 6661(a). Petitioners bear the burden of proof concerning their liability for these additions to tax. , affg. ; Rule 142. Petitioners, however, presented no arguments or evidence concerning these additions to tax. We sustain respondent's determination of these additions to tax. Due to concessions, Decisions will be entered under Rule 155.
Footnotes
1. Cases of the following petitioners have been consolidated for purposes of this proceeding: Max and Lilly Wider, docket Nos. 22688-81, 19018-82, 25607-82, and 25124-84, and Simon and Idelle Wider, docket Nos. 19232-82, 25545-82, and 25123-84.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure. Adjusted gross income.
* To be computed on underpayment of $605,531. ** To be computed on underpayment of $603,107.↩
3. Sec. 6653(b) provides in relevant part as follows: (b) Fraud. -- (1) In General. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.↩